1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CHARLES WERNER,                          Case No.  1:09-cv-0104-JLT

12                    Plaintiff,              ORDER REGARDING PLAINTIFF'S
                                              SOCIAL SECURITY COMPLAINT
13              vs.
                                              ORDER DIRECTING ENTRY OF JUDGMENT
14                                            FOR DEFENDANT MICHAEL J. ASTRUE,
                                              COMMISSIONER OF SOCIAL SECURITY,
15                                            AND AGAINST PLAINTIFF CHARLES J.
                                              WERNER
16   MICHAEL J. ASTRUE,                       (Doc. 16)
     Commissioner of Social Security
17
                      Defendant.
18   _____/

19                              **BACKGROUND**

20         Plaintiff Charles Werner ("Plaintiff") seeks judicial review of an administrative decision

21   denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

22   ("SSI") benefits under Titles II and  XVI of the Social Security Act (the "Act").

23                     **FACTS AND PRIOR PROCEEDINGS**[1]

24         In September 2005, Plaintiff filed applications for DIB under Title II and for SSI benefits

25   under Title XVI of the Act alleging that disability had prevented him from working since January 18,

26   2005. AR at 9, 117-19.   After initial denial of his request for benefits by the Agency, Plaintiff

27   _____

28         [1]  References to the Administrative Record will be designated as "AR," followed by the appropriate page
     number.

                                    1

1    requested a hearing before an Administrative Law Judge ("ALJ").   On May 29, 2008, the ALJ issued

2    a decision denying benefits.  Id. at 11-18.  Specifically, the ALJ found that Plaintiff was not disabled

3    within the meaning of the Act.  Id. at 18.  On December 20, 2008, the Appeals Council affirmed this

4    decision.  Id. at 1-3.

5         Hearing Testimony

6         Plaintiff testified he was born on August 27, 1957 (he was age 50 at the time of the hearing)

7    and had completed the 12th grade.  AR at 29.  He stated that, in the past, he had completed three

8    semesters of vocational training in computer graphics and art but discontinued this training because

9    of back pain.  Id. at 50-52.

10        Plaintiff testified he previously worked on oil pipelines and in a refinery.  AR at 32.  Also, he

11   stated that he worked as a janitor in a hospital.  Id. at 33.  He reported that  he had also done work as

12   a welder helper for a temporary employment service and as a cement installer/poorer for a septic tank

13   company.  Id. at 34.

14        Plaintiff testified that he stopped working full-time on January 18, 2005 (his claimed

15   disability date).  See AR at 31, 53.  He stated that he did some part-time work in January and

16   February of 2008 (4-5 hours a day, four days a week) applying signs to cars.  Id. at 53-54.  He

17   explained he couldn't continue this work because of back and leg problems.  Id. at 54.  Plaintiff

18   testified he received "cash aid" welfare as his source of income.  AR at 44.

19        Plaintiff stated that he suffered from diabetes, high blood pressure, obesity, mid and low back

20   pain and carpel tunnel syndrome in both hands.  AR at 49.  Also, he described suffering from

21   headaches and insomnia.  Id. at 50.  He stated that he was five feet seven inches tall and weighed

22   about 250 pounds.  Id. at 43.  Although his doctors told him to diet, he estimated that he was only

23   about 20 percent compliant with prescribed diets.  Id.

24        Plaintiff estimated that he could lift a maximum of 20 pounds, although he qualified that by

25   stating he couldn't lift this amount more than three times a day and that he could lift only about five

26   pounds two to three times in a one-hour period.  AR at 40, 56.  He believed he could stand for about

27   20 minutes before needing to sit downand that he could sit for about 20 minutes before needing to

28   move around.  Id.  He estimated that he could walk about half of a block at once and that he could

2

concentrate on one thing for about two minutes at a time.  Id. at 41.  He testified that during an

eight hour day he needed to lie down and elevate his feet for about five hours.  Id.  He stated that he

could lift and hold a large bottle for approximately two minutes before needing to put it down.  Id. at

43.  After doing this, he estimated he would need about ten minutes to recover.  Id.

Plaintiff testified that he lived in a duplex with his 14-year old son.  AR at 44.  He estimated

that he prepared meals about three times a week.  Id. at 46.  In addition, he stated he performed

simple meal preparation about twice daily.  Id.  He stated that he washed the dishes about three times

a week.  Id.

Plaintiff also testified he made his own bed with assistance from his son and changed the

sheets about twice a month.  AR at 46-47.  He stated that he had no washer at home and traveled

about once a week to a laundromat.  Id. at 47.  He also stated that he shopped for groceries about

once a week and did other shopping about once a week also.  Id.  He stated that he attended church

regularly but belonged to no clubs and engaged in no extracurricular activities.  Id. at 48.  Plaintiff

testified that he handled personal tasks like dressing and bathing himself, although he stated that he

had difficulty doing these things.  Id. at 45.

Plaintiff testified that he had a driver's license and drove a truck with a manual transmission.

AR at 45.  He estimated that he drove about two times a day, including driving his son to school.  Id.

at 45, 48.  He believed he never drove more than five to ten miles at any time because of the cost of

gas.  Id. at 55.  Plaintiff stated that his daily activities included talking on the phone about two times

a day, watching television about six to eight hours a day, and meeting with friends and neighbors on

a daily basis.  Id. at 48.  Plaintiff testified that he read occasionally and painted pictures as a hobby.

Id. at 48-49.

A vocational expert ("VE"), Judith Najarian, also testified.  The VE characterized Plaintiff's

past work as roustabout, oil field work, janitor, welder helper and septic tank installer.  AR at 31-35.

The ALJ posed several hypotheticals to the VE all of which applied to a person of Plaintiff's

age, education, language ability and work experience.  In the first hypothetical, the ALJ described a

person not significantly limited in his ability to understand remember and carry out both simple and

detailed instructions and not significantly limited in concentration and persistence or in the ability to

1  adapt to changes in the work place.  See AR at 35, 290-91.  The person was generally not

2  significantly limited in his ability to get along with co-workers but was moderately limited in his

3  ability to interact with the general public.  Id. at 291.The VE opined that such a person could perform

4  Plaintiff's past work, including roustabout and septic tank installer.  AR at 35.

5       In the second hypothetical, the ALJ described a person who was restricted to lifting and

6  carrying 20 pounds occasionally and 10 pounds frequently, and who could stand/walk for six hours

7  in and eight-hour day and sit for six hours in an eight-hour day.  AR at 36.  The person was not

8  limited in his ability to push/pull but could climb, balance, stoop, kneel, crouch and crawl only

9  occasionally.  Id. The VE stated that a person with these physical restrictions could do none of

10  Plaintiff's past work but could engage in other unskilled light work, including jobs such as solderer

11  production line worker, packing line worker and machine tender.  AR at 37.

12       In a third hypothetical, the ALJ added the following postural restrictions: occasional bending,

13  stooping, crouching, pushing and pulling, restrictions on frequent fingering, grasping and

14  manipulation and difficulty lifting more than 20 pounds occasionally and 10 pounds frequently.  AR

15  at 37-38.  The VE opined that such a person could perform none of Plaintiff's previous work but

16  could perform a "very limited number" of other jobs, including protective clothing issuer (stock

17  clerk), usher and film counter clerk.  Id. at 39.

18       Relevant Medical Evidence

19       Upon testing of Plaintiff (an electromyograph and a nerve conduction velocity) in November

20  2004, Dr. Jay Yoo noted chronic neurogenic processes of the L4 and possibly L3 vertebrae on both

21  sides and concluded Plaintiff suffered from bilateral chronic lumbar radiculopathy and mild

22  peripheral neuropathy.  AR at 337.

23       Plaintiff underwent coronary bypass surgery in February, 2005.  AR at 222.  Follow-up

24  examinations in March, April and May of 2005 with the doctor who performed the surgery described

25  Plaintiff as doing well or "quite" well with some problems sleeping.  Id. at 184, 191, 220.

26       Records from Dr. Charles Tam, indicated that Plaintiff underwent an angioplasty in April

27  2005, after developing angina.  AR at 188.  After the procedure, Dr. Tam described Plaintiff as

28  asymptomatic.  Id.  A stress test was performed in May 2005, documented that Plaintiff had no chest

1   pain but Dr. Tam recommended that he lose weight, exercise and change his diet.  Id. at 187, 353.

2          Dr. Tam filed a report with the California Department of Social Services in June, 2005.  He

3   described Plaintiff as obese with high blood pressure and diabetes.  AR at 257-59.  He further noted

4   that Plaintiff had multiple risk factors for coronary artery disease ("CAD") but could make no

5   definitive determination concerning his ability to work.  See id.  Nevertheless, Dr. Tam believed that

6   Plaintiff could likely sustain sedentary work for eight hours a day in a 40-hour work week.  Id. at

7   260.

8          Treatment notes from John Lewis, a non-medical therapist at the Haven Counseling Center

9   between November 2005 and August 2006, characterized Plaintiff mental condition as well-oriented

10  in all spheres but also described him as suffering from poor impulse control, arising from feelings of

11  helplessness and persecution.  See AR at 274-75.  Lewis described Plaintiff as "moderately"

12  impaired but characterized his ability to understand and carry out simple instructions

13  as "good" and his ability to maintain concentration, persistence and pace as "fair."  Id. at 276.

14         Plaintiff was examined by Dr. Greg Hirokawa in August 2006.  Dr. Hirokawa noted that

15  Plaintiff described himself as depressed, angry and with poor sleep patterns that he attributed to

16  medical and financial problems.  AR at 261.  During a mental status examination, Dr. Hirokawa

17  described Plaintiff as overweight but noted good posture and eye contact.  Id. at 263.  He found

18  Plaintiff's mental activity, associative thought and thought content to be normal and appropriate.  Id.

19  He found no auditory or visual hallucinations or suicidal or delusional thinking but described

20  Plaintiff's mood as depressed.  Id.

21         Dr. Hirokawa diagnosed Plaintiff with depressive disorder with no psychosis.  AR at 264.  He

22  found a Global Assessment of Functioning ("GAF") level of 65.  Id.  He characterized Plaintiff's

23  depression as "mild" but noted poor interpersonal skills and anger problems.  Id.  He believed

24  Plaintiff's 12-month prognosis for improvement was "fair."  Id. at 265.  Dr. Hirokawa described

25  Plaintiff's ability to understand, remember and carry out both short and simple as well as detailed

26  instructions as "good."  Id.  He further believed that Plaintiff's ability to complete a workday without

27  interruptions from psychologically based problems was "good."  Id.  Finally, he found Plaintiff's

28  ability to interact with co-workers and handle the stress of a routine workday to be "good."  Id.

Plaintiff was given a physical examination by Dr. Emanuel Dozier, in August 2006.  Dr. Dozier noted complaints by Plaintiff of lower back pain, bilateral carpel tunnel syndrome, and degenerative arthritis.  AR at 266.  Dr. Dozier noted Plaintiff's history of coronary artery disease post-status by-pass surgery.  See id.  He recorded Plaintiff as negative for Tinel's sign (symptoms of carpel tunnel syndrome) and documented normal motor and grip strength in the hands.  Id. at 268.

Dr. Dozier's report described Plaintiff as alert and oriented with decent ambulation and no pain or shortness of breath.  AR at 267.  He noted no joint inflamation or problems with range of motion of the extremities.  Id. at 269.  Dr. Dozier diagnosed Plaintiff with low back pain with sciatica, bilateral carpel tunnel syndrome; post-status release surgery, post-surgery coronary artery disease with some chest pain; and chronic degenerative arthritis.  Id. at 270.

In a functional assessment, Dr. Dozier concluded that Plaintiff had postural restrictions to occasional bending, stooping, crouching, pushing and pulling and manipulative restrictions on frequent fingering, grasping and manipulation.  AR at 270.  He further concluded that Plaintiff would have difficulty lifting more than 20 pounds occasionally and ten pounds frequently and could stand, walk and sit for  six hours in a day.  Id. at 270-71.

In September 2006, Dr. R. Hood, a non-examining consultant, filled out a Mental Residual Functional Capacity Assessment of Plaintiff for the Social Security Administration based on a review of Plaintiff's records.  He found that Plaintiff was moderately limited in his ability to interact with the public but not significantly limited in all other cognitive areas; including his ability to understand, remember and carry out both simple and detailed instructions, and in his ability to maintain concentration and attention for an extended period of time.  AR at 290-91.  He believed that Plaintiff could sustain an ordinary work routine.  Id. at 291.  Dr. Hood opined further that Plaintiff could sustain sufficient concentration, persistence and pace to perform work without close supervision.  Id. at 292.

A physical RFC assessment by another non-examining expert, Dr. E.A. Forte,, concluded that Plaintiff retained the physical ability to lift 20 pounds occasionally and 10 pounds frequently and that he could stand/walk for six hours in and eight-hour day and sit for six hours in an eight-hour day.  AR at 313.  Dr. Forte found that Plaintiff could climb, balance, stoop, kneel, crouch and crawl

1    occasionally and had no manipulative limitations.  Id. at 314.

2          In a case analysis report filed  in August 2006, Dr. R.H. Frye concluded that Plaintiff retained

3    the physical ability for light RFC with the ability to perform simple repetitive tasks with postural

4    limitations.  AR at 333-34.

5          More recent records from an examination conducted by a heart specialist upon referral from

6    Plaintiff's treating doctor in early 2008, showed that Plaintiff complained of chest pain, shortness of

7    breath and dizziness.  AR at 359, 360.  However, a stress test performed at this time indicated

8    Plaintiff experienced no chest pain during the test and had only "mild" shortness of breath and no

9    significant arrhythmia.  See id. at 360.  The doctor who administered the test characterized Plaintiff's

10   condition as "consistent with low probability of significant coronary artery disease."  Id.

11               ALJ Findings

12         The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation.  In this

13   five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful

14   activity since the date of his application for SSI benefits of April 12, 2006.  AR at 11.  Second, at

15   Step Two he found that Plaintiff had several severe impairments, including: diabetes mellitus,

16   hypertension, obesity, status post carpal tunnel release bilateral and carpal tunnel syndrome, thoracic

17   and lumbar spine degenerative disc disease, coronary artery disease, and status post coronary artery

18   bypass grafts times four with cardiomegaly.  Id.  However, in the third step of his evaluation, the ALJ

19   determined that no impairment, or combination of impairments, met or exceeded the level required

20   under Agency guidelines for presumed disability.  Id. at 14.

21         In the fourth step of his analysis, the ALJ determined that Plaintiff had the RFC to lift 20

22   pounds occasionally and 10 pounds frequently, stand, walk, and sit for six hours and would have the

23   postural restrictions of occasional bending, stooping, crouching, pushing, and pulling and

24   manipulative restrictions on frequent fingering, grasping, and manipulation.  AR at 14.  The ALJ

25   determined that Plaintiff could not perform his past relevant work (Step 4) but, based on his RFC

26   assessment and the testimony of the VE, concluded that Plaintiff retained the ability to perform other

27   work in the national economy (Step 5).  Id. at 16-17.  As a result, the ALJ determined that Plaintiff

28   was not disabled as defined by the Act.  Id. at 18.

7

1

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R.

8

§§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]  As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since he filed for SSI benefits on January 18, 2005; (2) had medically determinable severe impairments (diabetes mellitus, hypertension, obesity, status post carpel tunnel release bilateral and carpal tunnel syndrome, thoracic and lumbar spine degenerative disc disease, coronary artery disease, and status post coronary artery bypass grafts times four with cardiomegaly); (3) did not have an impairment or combination of impairments which met or equaled one of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) that he was unable to perform his past relevant work; but (5) retained the RFC to perform other work related activities.  AR at 11-17.  The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act.  Id. at 18.

Plaintiff challenges the ALJ's determinations at Steps 3 and 4 of the sequential evaluation process, as well as his determination at Step 5, where an individual's ability to perform work is assessed based on his RFC.

**DISCUSSION**

Plaintiff raises several claims of error on appeal.  First, he asserts that the ALJ erred in failing to properly discuss at Step 3 of the sequential evaluation whether his "severe" impairments met or equaled the listings at 20 C.F.R. Pt. 404, Subpart P, App. 1.  (Doc. 16 at 7).  Next, he contends that the ALJ failed to properly develop the medical record.  (Id. at 14).  Last, he challenges the propriety of the ALJ's RFC finding.  (Id. at 18, 21).

1. The ALJ's Findings at Step 3 of the Sequential Evaluation Do Not Warrant Remand

Plaintiff asserts that the ALJ failed to "properly" determine whether his severe impairments met or equaled the conditions listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listing of Impairments).  (Doc. 16 at 7).  Specifically, Plaintiff notes that despite the fact that the ALJ found numerous "severe" physical impairments at Step 2, see AR at 11,  his analysis of Step 3 "is comprised of a single generic sentence lacking any evidence of the consideration of this issue."  (Doc. 16 at 9).   He argues that the ALJ's failure to explain his basis for concluding that Plaintiff's

---

[2] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1    impairments did not meet or equal the listings was "insufficient" and warrants remand.

2         It is Plaintiff's burden to establish that his impairment met a listing.  Bowen v. Yuckert, 482

3    U.S. 137, 146 n. 5 (1987).  Mere diagnosis of a listed impairment is not sufficient to sustain a finding

4    of disability; there must also be the findings required in the listing.  Young v. Sullivan, 911 F.2d 180,

5    183 (9th Cir. 1990).  It has been held that it is not necessary for the ALJ specifically to state what

6    evidence supports the conclusion that the claimant's impairments do not meet or exceed a listing;

7    rather, it is sufficient for an ALJ to summarize the pertinent record, including the doctor's

8    information regarding symptoms and the claimant's testimony, and to make specific findings

9    essential to the conclusion such that a reviewing court may know the basis for the conclusion.  It is

10   unnecessary to require the Commissioner, as a matter of law, to state why Plaintiff failed to satisfy

11   every listing.  Gonzalez v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

12        Although the ALJ did not elaborate on his finding that Plaintiff's impairments did not meet

13   or equal the listings (Step 3) for presumed disability, see AR at 14, the ALJ reviewed the medical

14   evidence in detail and noted (at Step 5) that although Plaintiff suffered from "severe" impairments

15   such as diabetes, coronary artery disease, and degenerative disc disease, and relied upon this

16   evidence in fashioning an RFC, none of these impairments precluded him from performing work.

17   See id. at 11-13, 14-16.  The ALJ cited notes and reports from several doctors, including two

18   examining doctors, Drs. Tam and Dozier, to support his conclusion that Plaintiff was capable of

19   performing "light" work.  See AR at 12-13.  Dr. Dozier, in particular, opined that Plaintiff could

20   perform as described in the ALJ's RFC with certain postural limits.  Id. at 270-71.  When the

21   hypothetical regarding a person with this RFC finding was posed to the VE at the administrative

22   hearing, the VE opined that Plaintiff could perform work, specifically jobs such as protective

23   clothing issuer (stock clerk), usher and film counter clerk.  See id. at 38-39.

24        As a result, the review of the ALJ's decision shows that he cited substantial evidence in the

25   record in determining that Plaintiff retained the RFC to perform work in the national economy and

26   thus, was not disabled.  See AR at 14-16, 17-18.  In doing so, the ALJ properly supported his

27   conclusion that Plaintiff's impairments, either singly or in combination, failed to meet or equal the

28   listings at Step 3.

10

1    Conversely, Plaintiff argues that many of the physical impairments the ALJ found "severe" at

2  Step 2 are contained in the listings and he asserts that the ALJ's failure to discuss each impairment in

3  detail and explain why at Step 3 the severity does not meet or equal the requirements of the listings

4  was error.  However, as noted, it is Plaintiff's burden to show that his impairments met or equaled

5  the listings.   The mere fact that he has severe impairments that could theoretically meet or equal a

6  listing, without more, is insufficient to establish error.  Young,  911 F.2d at 183 (mere diagnosis of a

7  listed impairment is not sufficient to sustain a finding of disability); see also Lewis v. Apfel, 236

8  F.3d 503, 514 (9th Cir. 2001) (rejecting a claim that the ALJ failed to sufficiently analyze whether the

9  claimant's impairments met or exceeded the listings where the claimant offered no theory of how the

10  evidence in the record met or exceeded the listings and failed to point to evidence that showed

11  equality with a listing).  Moreover, in evaluating in detail the medical evidence and concluding that

12  the severity of Plaintiff's impairments did not preclude work at Step 5, the ALJ effectively provided

13  support for his conclusion that none of Plaintiff's impairments, either singly or in combination, met

14  or exceeded the listings at Step 3 (presumed disability).  See Gonzalez, 914 F.2d at 1200-01.

15    2. The ALJ Did Not Fail to Fully Develop the Record

16    In June 2006, Plaintiff's treating doctor, Dr. Tam, recommended that a treadmill stress test be

17  administered to Plaintiff to help him determine if Plaintiff was disabled.  See AR at 259.  However,

18  as noted by Dr. Hood in his September 2006 report, Plaintiff was unable to take the test at that time

19  because of a broken toe.  Id. at 318.  Noting that waiting for the toe to heal could take three months,

20  Dr. Hood recommended that the test not be administered and that "we make our decision with what

21  we have."  Id.  Dr. Hood then opined that the evidence was sufficient to make a determination

22  without a stress test and opined that evidence supporting a light RFC "is well supported."  Id.

23  However, in light of Dr. Tam's statement that he wanted to see results from a stress test before he

24  reaching a conclusion on Plaintiff's condition, Plaintiff contends that the ALJ failed to fully develop

25  the medical record by failing to direct that the stress test requested by Dr. Tam be performed.  (See

26  Doc. 16 at 14-15).

27    The law imposes a duty on the ALJ to develop the record in some circumstances.  20 C.F.R.

28  §§ 404.1512(d) - (f), 416.912(d) - (f) (recognizing a duty on the agency to develop a medical history,

11

1   recontact medical resources, and arrange a consultative examination if the evidence received is

2   ambiguous or inadequate for a determination of disability); see also Mayes v. Massanari, 262 F.3d

3   963, 968 (9th Cir. 2001).

4          The Court notes at the outset that nothing in the record indicates that Plaintiff requested

5   during administrative proceedings that the ALJ order a stress test to bolster the record.  On the

6   contrary, when the ALJ asked Plaintiff's attorney at the commencement of the administrative hearing

7   if the medical record was complete, she agreed that it was.  AR at 25-26; see Magallanes-Damian v.

8   INS, 783 F.2d 931, 934 (9th Cir. 1986) ("Petitioner's are generally bound by the conduct of their

9   attorneys, including admissions made by them, absent egregious circumstances.").  In light of this

10  admission, it  does not appear that the ALJ breached any duty to develop the record.

11         Moreover, the administrative hearing did not take place until March 2008, nearly two years

12  after Dr. Tam indicated a desire to see a stress test.  Plaintiff fails to explain why, during the two

13  years between Dr. Tam's desire for a stress test and the commencement of the administrative

14  hearing, he did not seek to perform this test if he believed that the results were necessary before Dr.

15  Tam could render an informed opinion on his ability to work.  In fact, documentation in the record

16  shows a stress test was administered to Plaintiff in early 2008, only a month prior to the

17  administrative hearing.  Notably, that result of that test demonstrates that Plaintiff suffered no chest

18  pain or significant arrhythmia and only "mild" shortness of breath.  See AR at 360.  Based, at least in

19  part on the results of that test, Dr. Habib characterized Plaintiff's condition as "consistent with low

20  probability of significant coronary artery disease." Id.

21         Thus, despite the failure to proceed with a stress test in 2006, the record was not ambiguous

22  or inadequate with respect to Plaintiff's physical impairments and the ALJ's determination that

23  Plaintiff retained the RFC to perform light work in the local and national economy is supported by

24  substantial evidence in the record. For instance, as already noted,  Dr. Dozier, an examining

25  physician, opined that Plaintiff was capable of lifting up to 20 pounds occasionally and 10 pounds

26  frequently, and could stand, walk and sit for up to six hours in an eight hour day.  Also Dr. Dozier

27  noted postural restrictions for occasional bending, stooping, crouching, pushing and pulling and

28  manipulative restrictions on frequent fingering, grasping and manipulation.  AR at 270-71.  Non-

examining experts concurred with the functional assessment of Dr. Dozier.  See id. at 313-14, 318,

333-34.   Likewise, although Dr. Tam indicated a desire to see results of a stress test, he nonetheless

stated that he believed Plaintiff was capable of performing at least sedentary work.  See id. at 260.

In contrast, Plaintiff has cited no opinion from a medical expert to support his claim that the ALJ's

RFC finding was erroneous or that his physical condition prevented him from performing light work.

For these reasons, Plaintiff's claim that the ALJ failed to fully develop the record is without merit.

### 3.  The ALJ's RFC Assessment Was Not in Error

Plaintiff's RFC assessment was predicated on the third hypothetical he put to the ALJ.  In

that hypothetical, the ALJ offered no non-exertional limitation based on any mental impairment.  See

AR at 37-38.  The VE concluded, based on the physical restrictions and non-exertional limitations

involving occasional bending, stooping, crouching, pushing and pulling, and additional restrictions

on frequent fingering, grasping and manipulation, that Plaintiff could perform certain light, unskilled

work, including that of protective clothing issuer (stock clerk), usher, and film counter clerk.  Id. at

38-39.  The ALJ relied on this opinion in adopting his RFC assessment and in determining that

Plaintiff could perform other work which existed in significant numbers in the state and national

economy (Step 5).  Id. at 18.

Plaintiff contends that the ALJ's failure to discuss, let alone incorporate, his mental

impairment (depression) in fashioning the RFC was error and warrants remand.  In particular, he

contends that in the hypothetical the ALJ put to the VE which formed the basis for the RFC

assessment (the third hypothetical), no mention of any mental impairment on social functioning was

put to the VE even though mental health evidence from a non-examining source recommended that

Plaintiff not engage in work involving "frequent" contact with the general public.  (See id. at 20-21).

He further notes that two of the jobs which the VE opined Plaintiff could specifically perform, that

of usher and film counter clerk, involve significant interaction with the public.  (Id. at 20).

The ALJ discussed Plaintiff's mental impairment of depression during his Step 2 assessment

and concluded that it was not a "severe" impairment.  See AR at 13-14.  To support this conclusion,

he cited evidence from an examining psychiatrist, Dr. Hirokawa.  In particular, the ALJ noted Dr.

Hirokawa's conclusion, based on his examination and testing, that Plaintiff's functioning was "good

1    in all areas." <u>See</u> <u>id</u>. at 13, 264.  In addition, he noted Dr. Hirokawa's finding that Plaintiff operated

2    at a global assessment of functioning of 65, which is indicative of someone with "some mild

3    symptoms . . . but generally functioning pretty well." <u>Id</u>.

4           Review of Dr. Hirokawa's report shows he characterized Plaintiff's depression as "mild."

5    AR at 264.   Dr. Hirokawa believed that  Plaintiff was capable of completing a workday without

6    interruption from psychologically based problems and also believed that he had the ability to interact

7    with co-workers and handle the stress of a routine workday. <u>Id</u>. at 264-65.  In addition, although Dr.

8    Hirokawa made no specific finding in regard to Plaintiff's ability to interact with the public

9    generally, he described Plaintiff's social judgment and awareness of socially appropriate behavior as

10   "good." <u>Id</u>. at 265.

11         Plaintiff highlights a Mental RFC Assessment and Psychiatric Review Technique Form filled

12   out by a non-examining expert, Dr. Hood, finding that Plaintiff was "moderately" restricted in his

13   ability to interact with the general public and recommending against "frequent" contact with the

14   public.  AR at 291, 292, 301.  The ALJ acknowledged these conclusions by the non-examining

15   physician but stated that "I give greater weight to Dr. Hirokawa, as an examining source, who

16   imposed no such limitations."  <u>Id</u>. at 13.

17         In <u>Hoopai v. Astrue</u>, 499 F.3d 1071 (9th Cir. 2007), the Court of Appeals stated that mild or

18   moderate depression is not a sufficiently severe non-exertional limitation ona claimant's ability to do

19   work. <u>See</u> <u>id</u>. at 1076-77.  The Court held further that where "substantial evidence supports the

20   ALJ's conclusion that the depression was not a sufficiently severe non-exertional limitation" any

21   failure to present such information in a hypothetical to the VE was not error.  <u>See</u> 499 F.3d at 1076-

22   77.  By extension, a failure to discuss or incorporate a claimed limitation (such as a limitation on the

23   ability to interact with the general public) that flows from such a "mild" impairment (depression),

24   was not error if supported by substantial evidence.

25         Similarly, the ALJ's failure to incorporate any alleged limitation on Plaintiff's ability to

26   interact with the general public was not error.   On this point, the ALJ relied generally on Dr.

27   Hirokawa's opinion, that Plaintiff's depression was only mild. Also, he relied specifically upon Dr.

28   Hirokawa's findings to discount the non-examining consultant's conclusion that Plaintiff was

1    "moderately limited" in his ability to interact with the general public.  The Court concludes that

2    discounting the non-examining consultants view was reasonable in light of Dr. Hirokawa's opinion

3    and, thus, was supported by substantial evidence.  See Magallanes v. Bowen, 881 F.2d 747, 750 (9th

4    Cir. 1989) ("The ALJ is responsible for determining credibility and resolving conflicts in the medical

5    testimony.")

6         Last, the ALJ recounted Plaintiff's social activities to support his RFC finding.  AR at 15-16.

7    As he discussed, Plaintiff's own description of his daily activities were not supportive of someone

8    with disabling symptoms and limitations.   For instance, Plaintiff testified he prepared meals for

9    himself daily, washed dishes, made his own bed, and traveled to a laundromat once a week to wash

10   clothes.  Id. at 44, 47.  Plaintiff testified that he drove a manual transmission truck at least a couple

11   of times a day, including driving his son to school.  Id. at 45, 48.  He also recounted that he attended

12   church regularly, shopped for groceries once a week, did other shopping once a week, talked on the

13   phone a couple of times each day and met with friends and neighbors on a daily basis.  Id. at 48.

14   These activities further bolster the ALJ's conclusion that Plaintiff retained the RFC to perform at

15   least light work in the state and national economy.

16        4.  Any Error by the ALJ in Concluding that Plaintiff Retained the RFC to Perform the Job of

17        Protective Clothing Issuer is Harmless and Does Not Warrant Remand

18        Plaintiff contends that the ALJ erred in concluding that he retained the RFC to perform the

19   job of protective clothing issuer (stock clerk).  AR at 21.  Plaintiff argues that the Dictionary of

20   Occupational Titles ("DOT") requires that an individual in this job have the ability to "frequently

21   stoop and frequently crouch."  Given that the ALJ determined in his RFC finding that Plaintiff

22   retained the ability to perform this conduct only "occasionally," Plaintiff asserts that the VE's

23   opinion is erroneous and warrants reversal.

24        The Court disagrees.  Even assuming that the ALJ erred in finding that the position of

25   protective clothing issuer was consistent with his RFC assessment, the ALJ specifically noted other

26   jobs, in particular, that of usher and film counter clerk, which existed in sufficient numbers in the

27   economy that Plaintiff could perform. With respect to these remaining jobs, the ALJ noted 2,768

28   usher positions in California and 24,912 nationally and 2,260 film counter clerk positions in

California and 20,340 such positions nationally.  AR at 17-18.  As a result, any error with respect to the protective clothing issuer job was harmless and the ALJ's conclusion that his RFC assessment permitted Plaintiff to perform other work in significant numbers in the state and national economy was not error.  See Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (holding that finding that 1,266 jobs existed in Los Angeles and Orange County constituted a significant number of local jobs at Step 5).

## CONCLUSION

For these reasons, the Court concludes that the ALJ cited substantial evidence in the record to support his conclusion that Plaintiff could perform work and was not disabled.      Accordingly, the Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Charles J. Werner.


IT IS SO ORDERED.

Dated:   **May 27, 2010**                                    **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

16